

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| PAUL DEMUTH, )<br>)<br>   Claimant, )<br>)<br>v. )<br>)<br>NAVIENT SOLUTIONS, LLC, )<br>)<br>   Respondent. ) | No. 01-16-0002-0590 |

### OPINION AND AWARD

I, Domenic Bellisario, the undersigned arbitrator, having been designated in accordance with the contract entered into by Paul Demuth ("Demuth"), and an in-person hearing having been held on March 24, 2017 in Washington, DC, and having been duly sworn and having duly heard the proofs and allegations of the parties, do hereby FIND as follows:

### STATEMENT OF THE CASE:

On or about February 23, 2007, Demuth applied for, and received, a Signature Student Loan to assist with his enrollment in a Criminal Justice program. He had previously completed a Paralegal Studies program in 2005. The Student Loan Application and Promissory Note ("Note") was executed by Demuth and co-signed by his mother, K. Charlene Davey. By virtue of Section M.13 of the Note, Demuth agreed as follows:

> I understand that you may use automated telephone dialing equipment or an
> artificial or pre-recorded voice message to contact me in connection with this
> loan or loan application. You may contact me at any telephone number I provide
> in this application or I provide in the future, even if number is a cellular
> telephone number.

Navient Solutions, LLC ("Navient")(formerly Navient Solutions, Inc.) serviced Demuth's loan.

Navient uses a Noble dialing system to contact borrowers. The system utilizes three methods or means of calling borrowers, namely, Preview Mode, Predictive Mode, and Message Blasts. In Preview Mode the computer program generates a list of borrowers to be reviewed by an agent. The agent reviews the borrower's information

on a screen and decides whether to call the borrower. If so, the agent can click on a telephone number on the monitor which automatically dials the borrower's telephone number. Preview Mode calls require the agent to activate the call and the agent is on the line while the call is placed. In Predictive Mode, the system automatically dials telephone numbers and routes the answered calls to an agent. There is no agent involvement in the placing of the call. Like Predictive Mode, Messages Blasts are automatic calls which simply play a pre-recorded message; there is no agent involvement.

Navient uses an indicator system which notes whether or not the borrower has given consent to be called using an automatic telephone dialing system ("ATDS"). If the consent indicator is set to "Y" in the system then any of the three methods will be used to call the borrower. If the indicator is set to "N," then the outgoing calls will be made using the Preview Mode only. The switching of the consent designation cannot be done automatically, it must be done manually.

At some point, Demuth's loan went into default and Navient began vigorous efforts to collect the debt. Specifically, Navient began making numerous collection-related calls to the cellular telephone number(s) Demuth had provided, as well as calling his mother on her phone. The calls to his mother were particularly disturbing and upsetting to Demuth, especially when Navient would call his mother instead of calling him.

While Demuth had various cellular telephone numbers over the years which he provided to Navient, the only telephone number involved in this case is the number ending in 8029 which Demuth had beginning in or about July 2014. All three types of calls were made to Demuth's 8029 number. During the period in question, July 7, 2014, through February 8, 2016, 21 Preview Mode calls were made, 258 Predictive Mode calls were made, and 43 Message Blasts were made. Most of these calls went unanswered. The answered calls and Demuth's calls to Navient were recorded. Demuth testified that he repeatedly told Navient to stop calling him, but the calls persisted. Of all the telephone calls between Demuth and Navient, only 14 were submitted into evidence to provide this arbitrator with an accurate description of what was actually said.

The parties stipulated that the first relevant call occurred on July 7, 2014, when Navient called Demuth. The agent asked to speak with Demuth (mispronouncing his name). Demuth corrected the pronunciation, the agent apologized, and Demuth stated, "You guys are not supposed to be calling me period on your autodialer."

The agent then attempted to obtain identity verification from Demuth and he responded, "I'm not giving you nothing...." The call then ended.

On July 9, 2014, Demuth called Navient to make a payment and to set up a payment plan. He verified his identity by answering various questions, including confirming that 8029 was a good number at which to reach him. The call then proceeded to handle what Demuth wanted to accomplish.

On August 20, 2014, Demuth called Navient. The parties stipulated that during the call Demuth granted consent to receive calls from an ATDS. The Noble system consent indicator was switched to "Y" by the agent (review of prior entries do not reveal when it was set to "N").

On September 11, 2014, Navient called Demuth and Demuth quickly said, "I already spoke to you guys yesterday. It's already taken care of. Why do you keep calling me. It's already taken care of......Stop calling me and my co-signer." Then, hours later, Navient called and Demuth responded by saying, ".....hi, I'm here to tell you that you are going to stop calling me because this is borderline harassment. I already ... the eighth time...I'm suing you."

On September 16, 2014, Demuth called Navient and said, "You just called and hung up on me." The agent verified Demuth's identity and said he was 90 days past due. Demuth disputed this and said, "No I don't. I set up a payment plan...Why keep blowing up my phone? This is harassment.... this is ridiculous, stop harassing me, have a nice day."

On June 4, 2015, Navient called Demuth and verified his identity. A discussion ensued concerning a payment plan. During the conversation Demuth voiced frustration that his mother was being called instead of him.

On July 9, 2015, Navient called Demuth and Demuth said, "I already called you yesterday. Why are you calling me back? I'm giving you a payment for last month on Saturday because I've been in the hospital." The agent mentioned removing Demuth from the dialer and Demuth said no and indicated that he wanted to get everything set up to avoid future problems. After discussing a payment plan, Demuth stated, "You need to stop calling my mother. You have my email and phone. No reason you should not be calling me and not her." The conversation ended with Demuth saying, "You'll hear from me no later than Monday and I'll take care of it. If

you can, call me back like you just did if you can.....if you can...I don't know if you have to go through the autodialer whatever, give me a call..."

On July 15, 21015, Demuth called Navient and responds "Yep" when asked if 8029 was his number. Most of the conversation is unintelligible.  He was told that he is on the dialer system because the account is showing as delinquent and that Navient was not trying to harass anyone.

On August 31, 2015, Demuth called Navient.  After verifying his identity he is told he had a past due payment.  Demuth responded that a payment will be made on the fourth.  He complained about calls to his mother and the agent responded that the calls will continue until his account is current.  Demuth responded, "That's fine...."

On September 11, 2015, Navient called Demuth and asked to speak with him.  Demuth responded, "Stop calling me."

On December 4, 2015, Demuth called Navient to make a payment.  The agent had him confirm his contact information and he confirmed that 8029 was the only good number at which to reach him.

On January 27, 2016, Demuth called Navient and verified that 8029 was a good contact number.  Demuth stated that he would make a payment on the third of the month and directed to agent to contact his mother to get her financial information.

All calls ended as of February 8, 2016, after receipt of a cease and desist letter from Demuth's counsel, and the Noble system consent indicator was switched to "N."

On May 27, 2016, Demuth submitted a written demand for arbitration seeking recovery for alleged violations of the Telephone Consumer Protection Act 47 U.S.C. §227, *et seq*. ("TCPA").  Basically, Demuth contends that despite revoking any consent to have his cellular telephone number called by an ATDS, Navient persisted in making such calls.  Navient denied any violation of the TCPA and basically maintains that all calls to Demuth were made with prior consent and that Demuth never revoked consent during the period in question. Navient further asserts that Preview Mode calls made are not subject to challenge under the TCPA because they require human intervention and are not made using an ATDS.  In addition, Navient asserts a right to set off for the balance of the unpaid student loan in the amount $15,702.95, plus interest.

## LEGAL STANDARD

47 U.S.C. § 227(b)(1), provides, in pertinent part:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–

…

>   (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

The TCPA makes it unlawful for any person to make nonemergency calls using an ATDS or an artificial or prerecorded voice to a cellular telephone, unless the called party provided "prior express consent" to receive the calls.

The TCPA authorizes "a person" to bring a private cause of action against callers who make "any call using an automatic telephone dialing system or prerecorded voice to any telephone number assigned to a...cellular telephone..." See 47 U.S.C.§227(b)(1)(A)(iii); *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

To establish a TCPA violation, a claimant must prove: (1) a call was placed to a cellular or wireless phone, (2) by the use of an automatic dialing system and/or leaving an artificial or prerecorded message; (3) without the prior consent of the recipient. *Hossfeld v. Gov't Employees Ins. Co.*, 88 F. Supp. 3d 504, 509 (D. Md. 2015) (citing *Kristensen v. Cr. Payment Servs.*, 12 F. Supp.3d 1292, 1300 (D. Nev. 2014); *Wagner v. CLC Resorts & Devs., Inc.*, 32 F. Supp.3d 1193, 1195 (M.D. Fla. 2014), *Echevvaria v. Diversified Consultants, Inc.*, 2014 WL 929275 at * 4 (S.D.N.Y. Feb. 28, 2014), *Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir., *cert denied*, 132 S. Ct. 553 (2011).

A respondent who makes such calls is strictly liable unless it proves as an affirmative defense that it had the called party's prior express consent to call at all times. See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559, 565 ¶10 (Jan. 4, 2008); See *Soppet v. Enhanced Recovery Company, LLC*, 679 F.3d 637, 640-642 (7th Cir. 2012).

All calls made with an ATDS and without a claimant's consent violate the TCPA and expose a respondent to: (1) strict liability statutory damages of $500 per violative call; or (2) treble damages of up to

$1,500 per violative call if the respondent acted intentionally or knowingly. See 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3). Courts have consistently held that "the intent for treble damages does not require any malicious or wanton conduct, but rather is satisfied by merely 'knowing' conduct." *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp.2d 888, 895 (E.D. Mich. 2012). A knowing violation arises from the "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule, or regulation." *Sengenberger v. Credit Control Services, Inc.*, 2010 WL 1791270 at *6 (N.D. Ill. May 5, 2010), adhered to on reconsideration, 2010 WL 6373008 (N.D. Ill. June 17, 2010).

The TCPA does not explicitly grant consumers the right to revoke their prior express consent. See 47 U.S.C. § 227; see also 2012 Order, 27 F.C.C. Rcd. at 15394 ¶ 8 (noting that neither text nor legislative history of the TCPA directly addresses circumstances where prior express consent is deemed revoked). The FCC has since clarified that consumers may revoke consent in a July 2015 Declaratory Ruling and Order. See In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 30 F.C.C. Rcd 7961 (July 10, 2015) (the "2015 Order"). The 2015 Order stress that consumers "have a right to revoke consent, using any reasonable method including orally or in writing." Id. at 7996 ¶ 64. Consent can be revoked by a claimant at any time by any reasonable means. In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 15391, 15398 (2012) ("2012 Order"); In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961, 7996 (July 10, 2015) ("2015 Order"); *Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 271 (3d Cir. 2013).

Revocation of consent, however, cannot be vague, ambiguous, or unclear. To the contrary, a revocation must be clear and express a desire not to be called. "Consent is (only) terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct." Id., at 1253 (quoting Restatement (Second) of Torts § 892A, cmt. I (1979)); *Schweitzer v. Comenity Bank*, 158 F. Supp. 3d 1312, 1315 (S.D. Fla. 2016) (same). In short, for a revocation to be valid, it must be clear and unequivocal. *Schweitzer*, 158 F. Supp. 3d at 1315 (holding that a request to only call during mornings and workdays was an ineffective revocation of consent under the TCPA). The FCC has agreed that revocation must be clear:

> We, therefore, find that the consumer may revoke his or her consent in any reasonable manner that clearly expresses his or her desire not to receive further

calls, and that the consumer is not limited to using only a revocation method that the caller has established as one that it will accept.

2015 FCC Ruling at ¶ 70. Similarly, courts have addressed the requirement that a revocation of autodial consent be made clearly and unambiguously.

## POSITIONS OF THE PARTIES:

Demuth acknowledges that he gave initial consent to have his cellular telephone called using an ATDS when he took out the student loan. During the relevant time-frame, he claims that he revoked consent on July 7, 2014. Then he gave consent on August 20, 2014, but later revoked the consent on September 11, 2014, during the two phone calls that day. Demuth contends that he reiterated his revocation on September 16, 2014, and September 11, 2015. Demuth seeks statutory damages of $156,500 or treble damages of $469,500.

Navient concedes that Message Blasts and Predictive Mode calls are made with an ATDS. It contends, however, that Demuth never revoked his consent and therefore, all calls placed to his cellular telephone were appropriate. In the event that revocation had occurred, Navient contends that consent was thereafter given on several occasions when Demuth would confirm that the 8029 number was a good number at which to reach him. Further, Navient contends that Preview Mode calls are not actionable because they were not made with an ATDS and that it is entitled to a set off in the amount of $15,702.95, plus interest.

## ANALYSIS

The crux of this case is whether Demuth revoked his consent to receive ATDS calls. Demuth asserts that he specifically revoked consent during a telephone call on July 7 2014. In that call Demuth is heard to say, "I will deal with him," "You are not to....," "I'm not giving you...," "You're not supposed to be calling me period on autodialer...." Demuth contends that this constitutes revocation. Navient claims that this does not constitute revocation because there was no verification that it was Demuth speaking and that being told to stop calling and stating this is borderline harassment was an expression of frustration, not revocation.

I find that Demuth did revoke his consent at this point. Navient initiated the phone call, the agent asked to speak with him, apologized for mispronouncing his name, and noted the record to reflect that she has spoken with the borrower. While the full verification of identity protocol was not completed, the agent was clearly aware

that she was speaking with Demuth and he did not want to be called using an ATDS. Thus, ATDS calls thereafter violated the TCPA.

I do not find that Demuth gave consent to be called by an ATDS on July 9, 2014, by simply verifying his telephone number. He had an obligation to confirm his current telephone number. Doing so does not translate into consent to be called with an ATDS.

On August 20, 2014, Demuth called Navient to arrange for a payment arrangement. In order to do so, he had to give consent to have ATDS calls to his cellular number. The parties stipulated that Demuth gave consent at this point. Consent having been given, ATDS calls thereafter did not violate the TCPA unless there was a future revocation, which Demuth contends happened on September 11, 2014.

On September 11, 2014, a Predictive Mode call was made to Demuth and when asked by the agent if he was Demuth, Demuth identified himself and then is heard to say, "Stop calling me and my co-signer. This is already taken care of. Thank you. Thank you." Six hours later another Predictive Mode call was made to Demuth and after he answered the call and after he is asked if he were Demuth, he said, "Hi, I'm here to tell you stop calling this is borderline harassment." I find that this was a revocation of consent and reject Navient's argument that revocation failed because of the lack of verification.

On September 16, 2014, Demuth called Navient after receiving a prior call. He is heard to say sarcastically, "Thank you for calling. You just called and hung up." After verifying his identity he is told he is 90 days past due which Demuth disputed and said, "This is harassment. Stop harassing me." Demuth contends that this constitutes another revocation. Navient contends otherwise. I find that this was a reiteration of revocation.

On June 4, 2015, Demuth verified his phone number. As before, I reject Navient's argument that confirming one's telephone number constitutes consent to be called using an ATDS.

On July 9, 2015, Demuth stated, "If you can, call me back like you just did if you can.....if you can...I don't know if you have to go through the autodialer whatever, give me a call..." Demuth clearly gave the agent consent to be called using an ATDS.

On July 15, 2015, Demuth confirmed his telephone number. I reject Navient's argument that confirming one's telephone number constitutes consent to be called using an ATDS, but it does not matter because consent had already been given on July 9, 2015.

On August 31, 2015, Demuth called Navient and reported that he would be making a payment. He was told that he missed the July payment which Demuth disputed. Demuth is then heard to say, "You keep calling my co-signer." The agent says the calls were going to continue and Demuth responded, "That's fine, have a nice day." I reject Navient's argument that his statement constitutes consent to be called using an ATDS, but again, consent had already been given.

On September 11, 2015, a Navient agent called Demuth and asked, "May I speak with Paul Demuth?" Demuth responded, "This is him, stop calling me" and hangs up. I find this to be a revocation of consent.

On December 4, 2015, Demuth called Navient to make a payment. During the call he is asked if the numbers ending in 8029, 9895, and 9014 were good and he responded, "Take them all off of the ....only good number is the one I gave." As before, I reject Navient's argument that confirming one's telephone number constitutes consent to be called using an ATDS.

On January 27, 2016, Demuth called Navient and verified that 8029 was a good contact number. As before, I reject Navient's argument that confirming one's telephone number constitutes consent to be called using an ATDS.

As for the issue of whether calls made in Preview Mode constitute a violation of the TCPA, I find that they do not. Calls made in Preview Mode require human intervention. The agent must determine, after reviewing a borrower's file information, whether a call is warranted and, if so, manually click on a hotlink of sorts to make the call, and then waits on the line for an answer. Preview Mode does not fit the definition of an ATDS.

Reviewing the call logs, and removing the calls made during periods of consent and the Preview Mode calls, I find that the TCPA was violated on 206 occasions. I further find that under the circumstances, treble damages are warranted. I award Demuth $309,000.00 reduced by the amount of $15,702.95 (there is no evidence of what the post-9/27/16 interest is, so it is not included in the set-off) which he owes on his loan. Accordingly, I award Demuth $293,297.05.

**AWARD**

I find in favor of Demuth and against Navient in the amount of $293,297.05.

The administrative fees of the American Arbitration Association totaling $2,400.00, originally paid by Claimant in the amount of $200.00 and Respondent in the amount of $2,200.00, and the compensation and

expenses of the arbitrator totaling $2,500.00, originally paid solely by Respondent, shall be borne as incurred.

This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.


Dated:  May 11, 2017            /s/*Domenic A. Bellisario*
                                Arbitrator Domenic A. Bellisario